**BANK OF SERVICES & TRUSTS,**
Appellant,

v.

**John L. WHITNACK, Appellee.**

No. 17602.

Court of Civil Appeals of Texas,
Dallas.

May 14, 1971.

Rehearing Denied June 11, 1971.

Joe B. Abbey, Haynes & Boone, Dallas,
for appellant.

Steven G. Condos, Condos & North, Dallas, for appellee.

GUITTARD, Justice.

John L. Whitnack sued Bank of Services & Trusts on certificate of deposit for $15,000 payable to Donald Carman and endorsed by Carman. The bank claimed the right to offset Carman's debts against the certificate. Judgment was rendered on a verdict for Whitnack, and the bank appeals. The principal question is whether Whitnack is a "holder for value."

Carman was a licensed securities broker. Whitnack owned 4,500 shares of stock in Securities Management Corporation, in which Carman and others were also interested. A lawsuit arose concerning the af-

fairs of the corporation, and a settlement was made by which the stock of Whitnack, Carman and others was sold by Carman for $136,000. In order to close the deal, Whitnack delivered his stock certificate for 4,500 shares to Carman, and Carman gave him a receipt for it. Several days later, on July 26, 1966, Carman reported to Whitnack that he had the money and was ready to go to the bank and get it. Carman asked what Whitnack intended to do with the money and Whitnack said he intended to deposit it in Republic National Bank. Carman suggested that he put it in certificates of deposit at Bank of Services & Trusts and Texas Bank & Trust Company. Whitnack agreed, observing that they all paid the same rate of interest.

There is a conflict in the evidence as to whether Whitnack was present at the bank with Carman when the certificate of deposit was issued. Carman's testimony was not available, since he died before the suit was filed. According to Whitnack, he and Carman went to the Bank of Services & Trusts, and talked to B. J. McNabb, a vice-president well known to Carman. Carman told McNabb, "I owe John $15,000 for his stock. He has agreed to take a certificate of deposit." Carman asked Whitnack how long he wanted to make it and Whitnack said ninety days. McNabb called a clerk and had the certificate of deposit issued, gave it to Carman, who put it in an envelope. Whitnack and Carman then went to Texas Bank & Trust Company, and obtained another certificate of deposit for $20,000.

McNabb testified that Carman came in alone to buy the certificate and gave him a check for $15,000 on the Bowie National Bank, which was paid. According to McNabb, he never talked to Whitnack before the certificate of deposit matured.

Whitnack further testified that Carman would not give him the two certificates of deposit until Whitnack gave him back the receipt for the stock. They went to Deer-

ing's office, which Whitnack seems to have used for some of his dealings, and there Whitnack delivered to Carman the receipt and Carman gave him both certificates. Whitnack then noticed that the certificates were payable to Carman rather than to himself. He telephoned McNabb and asked whether the certificate was negotiable and McNabb told him that all their certificates were negotiable. He made a similar call to the officer at Texas Bank & Trust Company with the same result. He then had Carman endorse the two certificates and took them home. On cross-examination Whitnack was asked whether Carman assigned the certificate of deposit to him. He answered, "No, he didn't assign it. It was my money. He just endorsed it."

In October, shortly before maturity of the certificate, McNabb saw an article in a newspaper indicating that Carman was in financial difficulty. He wrote Carman a letter dated October 12 advising that the bank had offset certain indebtedness Carman owed the bank against Carman's deposits, including the certificate of deposit in question.

After maturity of the certificate, Whitnack went with Carman to the bank and demanded payment of the $15,000. McNabb refused. The $20,000 certificate was paid by Texas Bank & Trust Company.

In answer to special issues the jury found (1) that funds owned by Carman were used in the purchase of the certificate of deposit in question, (2) that Carman assigned all his interest in the certificate to Whitnack before maturity, (3) that on or about July 26, 1966, Whitnack "gave something of value" in exchange for Carman's assignment of the certificate, (4) that Whitnack was the holder and owner of the certificate on October 24, 1966, the maturity date, (6) that the bank did not have actual notice of the assignment before it offset the indebtedness of Carman, and (9) that the bank officer McNabb acted in good faith in making such offset.

It its first point the bank contends that there is no evidence to support the jury's finding in answer to Issue No. 3 that Whitnack "gave something of value" in exchange for Carman's assignment of the certificate of deposit.[1] It says that the receipt for the stock previously given by Carman to Whitnack, and su.rendered by Whitnack to Carman when Carman endorsed and delivered the certificate, was not in itself "something of value" because it was merely evidence of delivery of the stock, which had been sold, and since Whitnack, by his testimony, negatived any other consideration for the assignment, and even denied that the transaction was an assignment, Whitnack could not be a holder for value.

Texas Uniform Commercial Code, § 3–303, which became effective June 30, 1966[2] provides:

"A holder takes the instrument for value

(1) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

(2) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or

(3) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person."

■ We assume that delivery of the receipt to Carman, in the absence of any antecedent claim against him, would not have amounted to giving "something of value." It does not follow, however, that no value was given for the assignment. In determining whether there is evidence to support the verdict, we must accept Whit-

nack's testimony as true. According to Whitnack, he had a claim against Carman for the proceeds of his stock which Carman had sold, and the receipt was evidence of that claim. Carman insisted on delivery of the receipt before he would deliver the two certificates of deposit to Whitnack. The jury was justified in inferring that both Whitnack and Carman regarded the receipt as evidence of Whitnack's claim for the proceeds of the stock, and that when the receipt was exchanged for the certificates, Carman delivered the certificates to Whitnack in satisfaction of that antecedent claim. Consequently, the evidence supports the jury's finding that "something of value" was given for the assignment.

■ We understand the bank's contention to be that since Whitnack testified that the certificate was made out by mistake to Carman rather than to him, and that it was not assigned to him but was bought with his money, it could not have been transferred for an "agreed consideration" under Article 3.303, subdivision (1). However, the same statute provides in subdivision (2) that a holder takes the instrument for value "when he takes the instrument in payment of * * * an antecedent claim." No matter whose money had been used in purchasing the certificate, Whitnack's testimony shows that he had an antecedent claim against Carman, either for the proceeds of the stock, which Carman had sold, or for the certificates in Carman's possession, which had been issued in Carman's name. Endorsement and delivery of those certificates to Whitnack in exchange for the receipt evidencing Whitnack's claim, with intent on the part of both to extinguish that claim, was sufficient under the Code to constitute Whitnack a holder for value. As between Whitnack and Carman, the transaction was

1. No objection was made to this issue on the ground that it was too general or that the question submitted was one of law.

2. Now Tex.Bus. and Com.Code, Art. 3.303 (1968).

**182**

completed rather than executory. The case is not like those cited by the bank in which the assignees were held not holders for value to the extent that the consideration was executory.

Whitnack's testimony that the certificate was his money and that Carman did not assign it but only endorsed it was a statement of his opinion as to the legal effect of the transaction. The jury found that funds of Carman were used in the purchase of the certificate and that Carman did assign his interest in the certificate to Whitnack before maturity. The bank made no motion to disregard these findings in the trial court, and none of its points on this appeal challenge them as without support in the evidence, or as contrary to Whitnack's testimony. As we view the transaction described by Whitnack, it is immaterial whether the certificate was purchased with Whitnack's money or with Carman's. If the money was Whitnack's, then Carman was his agent and the bank had no right to offset Carman's debts against the certificate, even though Whitnack's interest was undisclosed. National Indemnity Co. v. Spring Branch State Bank, 162 Tex. 521, 348 S.W.2d 528 (1961). On the other hand, if, as the jury found, the money was Carman's, he owed Whitnack $35,000 for the stock, and that antecedent claim was paid when he delivered to Whitnack the two certificates of deposit. In either event, Whitnack was a holder for value.

The remaining points in appellant's brief need not be considered because they were not raised in the trial court, either by assignment in the motion for new trial or by any grounds stated in the motion for judgment *non obstante veredicto*. Texas Rules of Civil Procedure, rules 324, 418(b); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960). However, we have examined such points and the arguments under them and find no ground for reversal.

Affirmed.